UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTNET WORLDWIDE CORP. INC., | Index No. |
| *Plaintiff*, | |
| -against- | COMPLAINT AND DEMAND FOR JURY TRIAL |
| GABRIEL GRUBER, | |
| *Defendant.* | |

Plaintiff Artnet Worldwide Corp, Inc., ("artnet" or "Plaintiff"), by its attorneys, Rottenberg Lipman Rich, P.C., and for its Complaint against defendant Gabriel Gruber ("Gruber" or "Defendant"), alleges as follows:

## SUMMARY OF THE ACTION

1. This is a simple breach of contract action for damages concerning Defendant's failure to pay for a work of art for which he was the highest bidder at Plaintiff's online auction.

2. On May 5-May 19, 2021, Plaintiff conducted an online auction (the "Auction") in which it offered, *inter alia*, a work by the famous contemporary artist Damien Hirst. The painting, titled *Spring Intensity, 2008*, is executed in "butterflies and household gloss on canvas" and measures 73 x 109.38 inches (the "Work") *See* Exhibit 1.

3. Artnet assigned a 500,000-600,000 USD estimate to the Work. Auction estimates are published and are the auction house expert's opinion, based on a number of factors, as to the expected range within which the work will sell at auction.

4. Defendant, a resident of Argentina and a successful bidder on artnet's auction platform in the past, registered to bid on the Work and by doing so agreed to be bound by artnet's terms and conditions, including its Master Buyer Agreement available online.

5. Defendant bid on the Work three times, and at the end of the Auction on May 19 at 12.14 pm ET, he was the highest bidder and therefore the successful purchaser of the Work.

6. Defendant's winning bid was 500,000 USD. Pursuant to artnet's terms and conditions, the purchase was also subject to a buyer's premium of 20% of the hammer price, i.e. 100,000 USD plus any applicable sales and import/export taxes.

7. Defendant was promptly sent an invoice for his purchase. See Exhibit 2. Pursuant to the terms and conditions, payment was due on or before June 2, 2021.

8. Defendant refused to pay for the Work, claiming that he had believed he was bidding 500 USD, not 500,000 USD, despite the fact that the published estimate and the amount of his actual bids were clearly indicated on the artnet auction platform and in communications with him.

9. Despite repeated requests by artnet to make payment, Defendant has failed to do so. Accordingly, Defendant is in breach of artnet's terms and conditions. Plaintiff hereby seeks judgment that the Defendant is in breach of his contract with artnet and an award of not less than $100,000 and artnet's reasonable attorney's fees and costs.

## PARTIES AND JURISDICTION

10. Artnet Worldwide Corp. is a duly organized corporation with its principal place of business at 233 Broadway, New York, NY.

11. Defendant Gabriel Gruber is an individual residing, on information and belief, at Tronador 3430, TR1, 3D Buenos Aires, Argentina 1430.

12. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1332 because the parties are diverse and the amount in controversy exceeds $75,000.

13. Venue is proper in this district pursuant to 28 U.S.C. §1392 because a substantial part of the events giving rise to the claims occurred in the Southern District of New York.

14. The Defendant has transacted business in this state and has consented to personal jurisdiction in this district with respect to the subject matter of this action pursuant to the Master Buyer Agreement.

## STATEMENT OF FACTS

15. Artnet auctions conducts up to seventy online auctions every year, primarily in modern and contemporary works of art.

16. Each artnet auction is conducted over a set period of hours with an advertised start time and closing time. Potential buyers may register to bid and then bid by a number of methods including making bids on the auction platform from their computer.

17. Bidders may bid as often as they wish while the auction is open. The artnet auction page for each lot shows *inter alia* details of the work, an image of the work, the closing time of the auction, the current bid, and whether you as the user currently have the leading bid. At the time the auction is advertised to end, the timer ticks down and the auction for that lot ends. The highest bidder when the auction closes is the successful bidder, assuming that bid is at or above the reserve, the number determined by consignor and artnet below which no sale is permitted.

18. One of the prime lots in the artnet May 2021 Auction was lot 133929, the Work. The Work was consigned to auction by a collector in the United States.

19. Artnet assigned the Work an estimate of 500,000-600,000 USD based on comparisons with the auction price of comparable works, the current state of the art market, and discussions with the consignor. Because this was an important work, artnet advertised it widely.

20. The consignor and artnet agreed that the Work would be offered with a reserve of 500,000 USD, below which the Work would not sell.

21. On or before May 6, 2021, Defendant contacted artnet to register to bid at the Auction. Artnet was already familiar with Defendant as he had successfully bid at an artnet auction in the past. In addition, Defendant was required as a condition of registration to provide a credit card number against which artnet would charge the buyer's premium if the bidder was successful.

22. Soon after the Auction for the Work commenced, Defendant entered a bid for 400,000 USD via his computer. Advised by artnet that his bid was received but that it did not meet the reserve, Defendant bid twice more to 500,000 USD, with each bid acknowledged by artnet, at which time he was advised he had reached the reserve. Defendant authorized artnet to bid up to 600,000 USD if necessary to secure the work against other bidders.

23. During the Auction, artnet checked in with Defendant several times. For example, on May 10, 2021, artnet specialist Jason Rulnick who was monitoring the sale emailed Defendant to confirm he was currently the leading bidder and to ask if he had any questions. Defendant thanked him in a return email and said that he had none. On May 19, 2021, artnet sent Defendant an automated email advising him that the auction for this lot was scheduled to end soon and prompting him to review his bid status.

24. In the event, there were no other bidders for the Work. Accordingly, when the auction for this lot closed on May 19, 2021, Defendant was sent an automated email congratulating him on his successful bid of 500,000 USD and his purchase.

25. On or about May 25, 2021, artnet sent Defendant an invoice for 574,875 USD, being the hammer price of 500,000 USD, plus Canadian sales tax of 74,975 USD. Pursuant to its

Buyer's Master Agreement, artnet was also entitled to take the buyer's premium of 100,000 USD against the credit card on file for the Buyer.

26.  Defendant refused to pay the invoice. He claims that he believed he was bidding 500 USD, not 500,000 USD, due to a currency misunderstanding based on the fact that both the United States dollar and Argentina peso use the $ sign.

27.   Defendant's claims make no sense for several reasons, including (i) artnet is a US company and always indicates its currency in US dollars; (ii) in promotional materials and on the artnet auction site itself, the estimate for the work is generally indicated not with the dollar sign but as "USD"; (iii) Defendant was prompted several times during the Auction to review his bid carefully for any questions and he raised none; (iv) Damien Hirst is a world-famous artist whose paintings typically sell for hundreds of thousands or even millions of dollars and this was a particularly large painting measuring more than 5 x 9 feet (1.8 x 2.7 meters); (v) Defendant was clearly familiar with the artnet auction site (having previously purchased two works at artnet auctions) and with Damien Hirst's work and its market value in particular because in 2013 he had already successfully bid on and paid for another much more modest Damien Hirst work from an artnet auction -- a print for 7,000 USD; and (vi) on information and belief Defendant is a successful entrepreneur with a background in finance and significant experience in cross border transactions who can well distinguish between a price expressed in dollars and one expressed in Argentine pesos.

28.  Defendant's basis for refusing to pay -- whether he claims he believes he was bidding 500 USD or 500 Argentine pesos (worth approximately 5 USD) – is laughable. Defendant clearly has simple buyer's remorse, which is no basis to avoid his contractual obligations.

29. Artnet's Master Buyer's Agreement which is on the artnet auctions site at https://www.artnet.com/auctions/master-buyer-agreement and which binds all bidders at auction states in relevant part: *You must honor all bids placed in an auction, and are obligated to complete the transaction with the respective seller if you are the winning bidder. The winning bid is defined as the highest bid in an auction without a reserve, and/or the highest bid in a reserve auction that meets or exceeds the reserve price. You also agree to pay the Buyer's Premium to artnet with respect to any auction item for which you are the winning bidder (See Buyer's Premium below). You acknowledge that by not fulfilling these obligations, your action or inaction may be legally actionable.*

30. Artnet's Master Buyer's Agreement also states in part: *Unless otherwise stated, the Buyer's Premium shall be paid in US Dollars. artnet reserves the right to collect on accounts due by various means, including but not limited to, the use of collection agencies, legal counsel, and direct charge to payment methods that are on file. You will be responsible for all costs of collection (including reasonable attorneys' fees) in the event you fail to pay any amounts due to artnet hereunder. artnet reserves the right to charge Buyer storage fees for any Property left in artnet's physical possession more than 30 days after purchase.*

31. Defendant's failure to pay the hammer price plus buyer's premium is a breach of the Master Buyer's Agreement to which he is bound. Buyer's refusal to pay the hammer price not only injured the consignor who is now left with a work of art that will be difficult if not impossible to sell in the near future, but it injures artnet's business reputation with potential consignors and encourages other high bidders with simple buyer's remorse to breach their agreements with impunity and undermine the integrity of its auctions. Defendant's failure to pay

artnet its buyer's premium of 100,000 USD further damages artnet which has expended considerable resources in obtaining the consignment, advertising and holding its sale, and attempting to enforce its rights and those of the consignor.

32. Because of Defendant's refusal to pay for the Work, artnet was forced to cancel the sale.

## COUNT 1

### (Breach of Contract)

33. Plaintiff hereby realleges Paragraphs 1 – 32 as though fully set forth herein.

34. By registering to bid and by bidding at artnet auctions, Defendant entered into an enforceable contract with Plaintiff whose terms are set forth in artnet's Master Buyer's Agreement available on the artnet auctions website.

35. Plaintiff performed all of its obligations under the contract by offering the Work for sale at auction and making the Work available for collection on payment of the hammer price plus buyer's premium and applicable taxes.

36. Defendant failed to perform under the contract by refusing to make payment of the hammer price plus buyer's premium and applicable taxes.

37. Defendant's actions constitute breach of contract.

38. By its acts and omissions herein, Defendant has damaged artnet in the amount of at least 100,000 USD, the buyer's premium to which it was it was entitled to under the Master Buyer's Agreement.

**WHEREFORE**, Plaintiff demands judgment as follows:

A. Defendant is in breach of his obligations under the Master Buyer's Agreement;

B. Award artnet damages in the amount of at least 100,000 USD;

C. Award artnet its reasonable attorney's fees and costs associated with its attempts to enforce its rights under the Master Buyer's Agreement;

D. Award such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: New York, New York
November 15, 2021

ROTTENBERG LIPMAN RICH, P.C.

By: /s/ Christopher J. Robinson
Christopher J. Robinson
The Helmsley Building
230 Park Avenue, 18th Floor
New York, New York 10169
(212) 661-3080

*Attorneys for Plaintiff*