USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/22/2024

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

ARTNET WORLDWIDE CORP INC.,

                                        Plaintiff,

            -against-


    GABRIEL GRUBER,

                                        Defendant.

**REPORT AND
RECOMMENDATION ON
DAMAGES INQUEST**

**21-CV-10459 (JHR) (KHP)**

**TO: THE HONORABLE JENNIFER H. REARDEN, United States District Judge**

**FROM: KATHARINE H. PARKER, United States Magistrate Judge**

Plaintiff Artnet Worldwide Corp Inc. ("Artnet"), commenced this action against

Defendant Gabriel Gruber for breach of contract.  The Complaint seeks an award of damages

pursuant to the Plaintiff's Master Buyer Agreement, as well as costs, expenses, attorneys' fees,

and interest.  Upon Plaintiff's application and in light of Defendant's failure to appear in or

otherwise defend against this action, on September 30, 2024, the Honorable Jennifer H.

Rearden granted Plaintiff's motion for a default judgment.  The matter was then referred to the

undersigned for an inquest on damages.

For the reasons stated below, I recommend that the Court enter judgment for Plaintiff

in the amount of $100,000 for Defendant's breach of contract.  I further recommend that the

Court award $22,449.24 in attorneys' fees and costs, prejudgment interest on $100,000 at 9%

to the date of entry of judgment, and post-judgement interest pursuant to 28 U.S.C. § 1961.

1

**BACKGROUND**

It is well-settled that in light of Defendant's default, Plaintiff's allegations, with the exception of those related to damages, are accepted as true. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). Accordingly, the following facts are established as a result of Defendants' default:

- Artnet is a corporation with a principal place of business in New York City. ECF No. 1, Complaint or "Compl." ¶10. Artnet conducts up to seventy online auctions every year. *Id*. ¶15. Each auction is conducted over a set period of hours with an advertised start time and closing time. *Id*. ¶16. Potential buyers may register to bid and then bid by a number of methods including making bids on the auction platform from their computer. *Id.* The highest bid at the time the auction for the lot closes is the winner. *Id*. ¶17.

- Defendant Gabriel Gruber is an individual residing in Buenos Aires, Argentina. *Id*. ¶11.

- On May 5-19, 2021, Plaintiff conducted an online auction (the "Auction") in which it offered a painting titled *Spring Intensity, 2008* by artist Damien Hirst (the "Work"). Compl. ¶2; ECF No. 28-5, Declaration of Colleen Cash, "Cash Dec" at ¶5.

- Defendant has been a successful bidder on Defendant's platform in the past. Compl. ¶21.

- Defendant registered to bid on the Work during the Auction and by doing so agreed to be bound by Artnet's terms and conditions, including its Master Buyer Agreement available online at https://www.artnet.com/auctions/master-buyer-agreement. Compl. ¶ 4; Cash Dec. ¶ 6.

- Soon after the Auction for the Work commenced, Defendant entered a bid for $400,000 via his computer.  Advised by Artnet that his bid was received but that it did not meet the reserve, Defendant bid twice more to $500,000 USD, with each bid acknowledged by Artnet, at which time he was advised he had reached the reserve, the amount below which the seller had not authorized the Work to sell.  Defendant authorized Artnet to bid up to $600,000 USD if necessary to secure the Work against other bidders. Compl. ¶ 22; Cash Dec. ¶ 7.

- Defendant's bid of 500,000 USD for the Work was the highest bid when the auction closed on May 19, 2021. Compl.  ¶ 24; Cash Dec. ¶ 8

- Pursuant to the Master Buyer Agreement, the winning bidder is required to pay (i) the final bid (hammer) price of the lot either directly to seller or, at Artnet's discretion, to seller via Artnet, (ii) any applicable sales tax, and (iii) a buyer's premium payable directly to Artnet which is calculated as a percentage of the hammer price.  *See* ECF No. 20-7, Master Buyer Agreement.

- The Master Buyer Agreement states in relevant part: *You must honor all bids placed in an auction, and are obligated to complete the transaction with the respective seller if you are the winning bidder. The winning bid is defined as the highest bid in an auction without a reserve, and/or the highest bid in a reserve auction that meets or exceeds the reserve price. You also agree to pay the Buyer's Premium to artnet with respect to any auction item for which you are the winning bidder (See Buyer's Premium below). You*

3

*acknowledge that by not fulfilling these obligations, your action or inaction may be legally actionable*. *Id*; Compl. ¶ 29; Cash Dec. ¶ 11.

- The buyer's premium on a hammer price of 500,000 USD is 20%, i.e. 100,000 USD. When registering to bid, potential buyers are required to provide credit card details from which the successful buyer's premium is typically charged.  As the Master Buyer Agreement states in relevant part: "Unless otherwise stated, the Buyer's Premium shall be paid in US Dollars. Artnet reserves the right to collect on accounts due by various means, including but not limited to, the use of collection agencies, legal counsel, and direct charge to payment methods that are on file." Compl. ¶ 30; Cash Dec. ¶¶ 10, 12 and Ex. 2 thereto.

- On or about May 25, 2021, Artnet sent Defendant an invoice for $574,875 USD, being the hammer price of 500,000 USD, plus tax of 74,975 USD. Compl. ¶ 25; Cash Dec. 13 and Ex. 3 thereto.  Payment was due on or before June 2, 2021.  Compl. ¶ 7.

- Defendant refused to pay the invoice. Compl. ¶ 26; Cash Dec. ¶ 14.

- Defendant's credit card rejected the charge for the buyer's premium.  Cash Dec. ¶ 14.

- When Defendant failed to pay the invoice, Artnet informed the consignor of the Work, who ultimately elected to withdraw the Work from sale pursuant to the terms of the Master Seller Agreement. Compl. ¶ 32; Cash Dec. ¶ 16.

- Even though the Work was withdrawn and the sale was canceled, Artnet elected to enforce the contract with respect to the buyer's premium as provided for in the Master Buyer Agreement. Cash Dec. ¶ 17.

- The Master Buyer Agreement provides: You will be responsible for all costs of collection (including reasonable attorneys' fees) in the event you fail to pay any amounts due to Artnet hereunder. Complaint ¶ 30; Cash Dec. ¶ 18.

## PROCEDURAL HISTORY

Pursuant to the Master Buyer Agreement, on December 7, 2021, Plaintiff filed the Complaint, seeking the buyer's premium of $100,000, interest, and its costs of enforcement including reasonable attorney's fees.  ECF No. 25, Default Judgment at 1. Plaintiff sought to serve process on the Defendant through channels established under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("the "Hague Convention") in January 2022.  *Id.* at *1*.  The Defendant having failed to appear in this action, nor filed an answer or other response to the Complaint, a Clerk's Certificate of Default was entered on December 16, 2022, and this Court issued an Order to Show Cause, directing Plaintiff to file an application for default judgment.  *Id.* at 2.  On April 14, 2023, counsel for the Plaintiff noted that it had been contacted by an attorney who claimed to have been engaged to represent the Defendant, and that Defendant was aware of the motion for a default judgement.  *Id* .at 3.  Ultimately, Plaintiff's application was not opposed by the May 30, 2023, deadline to do so.  *Id.*  On June 9, 2024, the Court issued an order adjourning a June 20 hearing on Plaintiff's motion to afford Defendant an additional opportunity to respond to the motion by June 26, 2023.  ECF No. 23.

Defendant did not meet the June 26 deadline, and accordingly, on September 20, 2023, this Court entered a Default Judgment for Plaintiff against Defendant, in an amount to be determined at inquest, plus costs, interest, and attorney's fees.  ECF No 25 at 5.

## DISCUSSION

### I. Proof of Damages

Federal Rule of Civil Procedure ("Rule") 55 governs judgments against a party that has failed to plead or otherwise defend itself in an action.  *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61 (2d Cir. 1981) (defendant's ongoing failure to appear supported failure to plead for the purpose of entry of default).  A default constitutes an admission of all well pleaded factual allegations in the complaint, and the allegations as they pertain to liability are deemed true. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). However, a plaintiff still bears the burden of establishing its entitlement to recovery and thus must substantiate its claims with evidence to prove the extent of their damages.  *Id.* Thus, even when a defendant has defaulted, a substantive analysis of the alleged claims is required to determine whether the plaintiff may be awarded damages, and proof of damages is required. *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974).

On October 5, 2023, the undersigned issued an order directing the parties to submit proposed findings of fact and conclusions of law concerning all damages and any other monetary relief permitted under the entry of default.  ECF No. 27.  Defendant was afforded an additional opportunity to respond by December 20, 2023.  *Id.*  In the order, the parties were advised that the Court may conduct the inquest based solely upon the written submissions of

the parties unless a party advanced a reason why the inquest should not be conducted on the written submissions alone. *Id* (citing C*ement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012); *Fustok v. ContiCommodity Servs. Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). Plaintiff submitted materials in support of the inquest on November 20, 2023, including proposed findings of fact, supporting affidavits, and other documentary evidence of damages. ECF No. 28. Defendants did not make any appearance or respond to Plaintiff's submissions. Neither party requested a hearing or otherwise opposed disposition of this action based on the papers.

## II. Breach of Contract

The breach of contract in this action relates to the terms of Artnet's online auction of the Work. Under New York law, a party alleging a breach of contact must prove the following: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *First Invests. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998) (quoting *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994)).

Plaintiff has established the necessary elements of a breach of contract claim. Based on a review of the allegations in the Complaint and Plaintiff's affidavits, Defendant registered to bid on the Work, and in doing so agreed to be bound by Artnet's terms and conditions, including its Master Buyer Agreement.[1] Compl. 4; Cash Dec 6. Plaintiff has also alleged that

---

[1] The undersigned notes that the Master Buyer Agreement contains an arbitration clause. ECF No. 20-7 at 5. However, the arbitration clause is not, by itself, a bar to this Court's exercise of subject matter jurisdiction where no party has moved to compel arbitration. *Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015)("the text, structure, and underlying policy of the [Federal Arbitration Act] mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested," rather than dismissal); *Tillman v. Amblnz Servs.,* No. 22CV06854JLRSN, 2023 WL 3304617, at *2 (S.D.N.Y. Mar. 15, 2023), report and

Defendant was the winning bidder in the auction, and provided the invoice sent to the Defendant after winning the auction.  Compl.  ¶ 24; Cash Dec. ¶ 8; ECF No. 28-8.   Plaintiff has therefore established the existence of a contract.  *See Hessel v. Christie's Inc.,* 399 F. Supp. 2d 506, 514 (S.D.N.Y. 2005)("by placing a bid in an auction, the bidder 'consent[s] to be bound by the terms in the catalog governing the auction.'")  Similarly, Plaintiff has demonstrated that it performed its role in the contract by accepting the Defendant's bids, and sending Defendant an invoice to complete the transaction when Defendant won the auction.  *See* ECF No. 28-8.  In failing to pay the invoice, Defendant breached the part of the Master Buyer Agreement which provides, "[Buyer] must honor all bids placed in an auction, and are obligated to complete the transaction with the respective seller if you are the winning bidder.. . You also agree to pay the Buyer 's Premium to Artnet with respect to any auction item for which you are the winning bidder. . . you acknowledge that by not fulfilling these obligations, your action or inaction may be legally actionable."  ECF No. 20-7.  Thus, Plaintiff is entitled to damages as provided for in the contract and under New York Law.

### III. Damages

The Master Buyer Agreement is governed by New York Law.  *Id.*  Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have

---

recommendation adopted, No. 22CV06854JLRSN, 2023 WL 2770579 (S.D.N.Y. Apr. 4, 2023)(collecting cases holding the presence of a valid arbitration agreement does not deprive the Court of subject matter jurisdiction.)  Similarly, an arbitration clause is not a categorical bar to the entry of default against a party to that arbitration agreement. *See Baker & Taylor, Inc, v. AlphaCraze.com Corp.,* 602 F.3d 486, 491 (2d Cir. 2010)(entering default judgment against defaulting party, finding defaulting party waived right to compel arbitration by not appearing or defending an action that was pending for eight months in the District Court); *cf AKF, Inc. v. Kessman Grp. Painting & Designs, Inc.,* 2021 WL 178867, at *4 (E.D.N.Y. Jan. 19, 2021)(denying motion to dismiss but granting motion to compel arbitration where Defendant moved to compel arbitration eleven days after Plaintiff sought certificate of default.)

8

occupied had the contract been fulfilled according to its terms." *See Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007).  A party's attorneys' fees and costs are recoverable in a breach of contract action if the contract explicitly provides for that fee-shifting. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 2015 WL 4154112 (S.D.N.Y., July 10, 2015) (permitting recovery of attorney's fees as damages for breach of contract claim where the contract explicitly provided that the non-breaching party would be entitled to attorney's fees and costs in the event of a breach.)  Pursuant to N.Y. C.P.L.R. § 5001(a), prejudgment interest "*shall* be recovered upon a sum awarded because of a breach of performance of a contract." *Maricultura Del Norte, S. de R.L. de C.V. v. Umami Sustainable Seafood, Inc.*, 769 F. App'x 44, 52 (2d Cir. 2019)(emphasis in original)(holding "N.Y. C.P.L.R. § 5001(a) speaks in mandatory language.")  Finally, 28 U.S.C. § 1961 provides for an award of post judgment interest "on any money judgment in a civil case recovered in a district court." *Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008).

Thus, the Court looks to the terms of the Master Buyer Agreement to calculate Plaintiff's damages. *JDF Cap. Inc. v. Apptigo Int'l, Inc.*, 2018 WL 2945622, at *3 (S.D.N.Y. May 8, 2018), *report and recommendation adopted*, 2018 WL 2943764 (S.D.N.Y. June 12, 2018).  The Master Buyer Agreement provides:

- In the event that you are the winning bidder and fail to complete the sale for any reason, including but not limited to failing to contact the Seller, pay the Seller, or come to terms with the Seller regarding shipping, Artnet has the right to retain the buyer's premium.

9

- In the event that you are the winning bidder and do not initiate payment within two weeks after the sale closing, Artnet reserves the right to cancel the sale on behalf of the seller and retain the buyer's premium.

- [Buyer] will be responsible for all costs of collection (including reasonable attorneys' fees) in the event you fail to pay any amounts due to Artnet hereunder.  ECF No. 20-7.

By the plain terms of the Master Buyer Agreement, Plaintiff is entitled to the value of the buyer's premium ($100,000), all costs of collection including reasonable attorneys' fees, along with pre- and post-judgment interest.  *Id*.

### IV. Reasonable Attorneys' Fees and Costs

Plaintiff seeks $17,009.25 in attorneys' fees plus $5,440 in costs which include the $400 filing fee to initiate this action, and $5,040 in costs paid to Meridian Investigations and Security related to their efforts to serve Defendant under the processes of the Hague Convention.  *See* ECF No. 28-1, Declaration of Christoper J. Robinson, "Robinson Dec" at ¶¶8-10.  Plaintiff has provided detailed invoices from Meridian Investigations and Security, as well as time records from counsel.  *See* ECF Nos. 28-3; 28-4.  The Court has reviewed these invoices and finds that the relevant time entries and costs are all related to prosecution of this action.  Therefore the only remaining issue is the reasonableness of the claimed attorneys' fees.

The traditional approach to determining a fee award is the "lodestar" calculation, which is the number of hours expended multiplied by a reasonable hourly rate*.  See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007).  The Second Circuit has held that "the lodestar ... creates a 'presumptively reasonable fee.'" *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir.

2011).  Here, Plaintiff was represented by Christopher J. Robinson, of counsel at Rottenberg Lipman Rich P.C., who has decades of experience in art law and art dealing.  *See* Roninson Dec. ¶2.  Robinson worked a total of 30.6 hours on the matter, initially at a discounted rate of $520/hour, and then at a discounted rate of $550/hour.  *Id* ¶6.  Three legal assistants from Rottenberg Lipman also billed a total of 2.55 hours at the rate of $175/hour.

The undersigned recommends approval of the requested rates as they are well within the reasonable range of rates for experienced attorneys performing similar works, and the rates are similar to those this Court has previously approved.  *Weiwei Gao v. Sidhu*, No. 11-CV-2711, 2013 WL 2896995, at *6 (S.D.N.Y. May 7, 2013) (rate of $550 per hour was a reasonable rate for a breach-of-contract commercial litigation case where the attorney had primary responsibility for the matter), *report and recommendation adopted*, 2013 WL 2896995 (S.D.N.Y. June 13, 2013); *SourceCode Commc'ns LLC v. In-telligent LLC*, No. 21CV10519VSBRWL, 2022 WL 1946260, at *6 (S.D.N.Y. May 25, 2022)(rate of $175/hour was reasonable for paralegals), report and recommendation adopted, No. 21CV10519VSBRWL, 2023 WL 2712342 (S.D.N.Y. Mar. 30, 2023).

The undersigned similarly recommends approval of the requested number of hours.  To determine the compensable hours, "the Court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case*." Tlacoapa v. Carregal,* 386 F. Supp.2d 362, 371 (S.D.N.Y. 2005). "The relevant issue ... is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures*." Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).  A court thus should exclude from the lodestar

11

calculation "excessive, redundant or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999).  The Court has reviewed the attorney billing records and finds the time spent to be reasonable.  The work performed included drafting the initial formal demand letter, drafting the complaint, drafting default motion papers, preparing exhibits, meeting to discuss strategy, and efforts to serve the Defendant pursuant to the Hague Convention.  The time records do not reflect "block billing," making it simple to confirm what time was spent on specific tasks.  Overall, the claimed 33.15 hours of legal services is entirely reasonable for the work performed over the two years of this litigation.

Therefore, I respectfully recommend Plaintiff be awarded the full $17,009.25 in attorneys' fees plus $5,440 in costs, for a total of $22,449.24.

### *V. Pre and Post Judgment Interest*

Under New York law, "[i]nterest is generally mandatory" upon a sum awarded for breach of contract.  *Rhodes v. Davis*, 628 F. App'x 787, 792 (2d Cir. 2015) (citing N.Y. C.P.L.R. §§ 5001 (a) and 5004).  "Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred." N.Y. C.P.L.R. § 5001 (b).  Here, the cause of action existed In New York, interest accrues at 9 percent per year.  CPLR § 5004 (2012).  At 9 percent, the annual interest on the principal damages sum of $100,000 is $9,000 ($24.65 per day).  Plaintiff claims that the cause of action existed as of the date of the unpaid May 25, 2021 invoice.  The invoice provided that the funds should be wired "immediately upon receipt."  ECF No. 1-2.  However, the complaint states that payment was due (and not received by) June 2, 2021. Compl. ¶ 7.

12

Accordingly, I respectfully recommend an award of prejudgment interest at the rate of $24.65 per day from June 2, 2021 (the day Defendant actually breached through non-payment) through the date of entry of judgment.

Post-judgment interest is mandatory pursuant to 28 U.S.C. § 1961. See *Bleecker v. Zetian Sys., Inc.*, 2013 WL 5951162, at *2 (S.D.N.Y. Nov. 1, 2013). Accordingly, I respectfully recommend post-judgment interest be awarded at the statutory rate calculated by the Clerk of the Court pursuant to 28 U.S.C. § 1961.

## CONCLUSION

For the reasons stated above, I respectfully recommend that Plaintiff be awarded: (a) principal damages in the amount of $100,000, representing Plaintiff's actual damages, (b) attorneys' fees and costs totaling $22,449.24, (c) prejudgment interest on such damages, at the interest rate of $24.65 per day from June 2, 2021 through the date of entry of judgment; and (d) post-judgment interest pursuant to 28 U.S.C. § 1961.

July 22, 2024

Respectfully submitted,

*Katharine H Parker*

_____

KATHARINE H. PARKER
United States Magistrate Judge

13

**NOTICE**

**Plaintiff shall have fourteen days and Defendant shall have seventeen days from this date to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) to this Report and Recommendation.  If Defendant files written objections to this Report and Recommendation, Plaintiff may respond to the objections within fourteen days after being served with a copy.  Fed. R. Civ. P.72(b)(2).  If Plaintiff files written objections, Defendant may respond to the objections within seventeen days.**

**Objections and responses to objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Jennifer H. Rearden at 500 Pearl Street, New York, NY 10007-1312, to the chambers of the undersigned magistrate judge, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any request for an extension of time to file objections must be directed to Judge Rearden.  Failure to file timely objections will result in a waiver of those objections for purposes of appeal.  See 28 U.S.C.§ 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).**